**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 21, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

WILLIAM RONALD CLARK,

      Plaintiff - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS; DAN SHANNON,
individually and in his official capacity as
Wyoming Department of Corrections
Director; CARL VOIGTSBERGER,
individually and in his official capacity as
Wyoming Department of Corrections State
Penitentiary Head Case Manager;
NEICOLE MOLDEN, individually and in
her official capacity as Wyoming
Department of Corrections State
Penitentiary Warden; CAPTAIN
GORDON, individually and in his official
capacity as Wyoming Department of
Corrections State Penitentiary Grievance
Coordinator; K KNOKES, individually and
in their official capacity as Wyoming
Department of Corrections State
Penitentiary Captain of Officers;
NEPHACARE MEDICAL; JESSICA
MARTINEZ, individually and in her
official capacity as Wyoming Department
of Corrections State Penitentiary Mail
Room Supervisor; DESIRAE KROB,
individually and in her official capacity as
Wyoming Department of Corrections State
Penitentiary Mailroom Clerk; SHONNA
ROSS, individually and in her official
capacity as Wyoming Department of
Corrections State Penitentiary Mailroom
Clerk; SHANNA KISS, individually and in
her official capacity as Wyoming

No. 25-8020
(D.C. No. 2:25-CV-00005-KHR)
(D. Wyo.)

Department of Corrections State Penitentiary Warden's Assistant; MISS DENNY, individually and in her official capacity as Wyoming Department of Corrections State Penitentiary Business Office Employee; JANELLE THAYER, individually and in her official capacity as Wyoming Department of Corrections State Penitentiary Case Manager of Movement and Job Placement; PAM NICHOLAS, individually and in her official capacity as Wyoming Department of Corrections State Penitentiary Program Director; SERGEANT KOTTKE, in their official capacity as Wyoming Department of Corrections State Penitentiary Correctional Officer; MISS OVERBECK, in her official capacity as Wyoming Department of Corrections State Penitentiary Disciplinary Officer,

Defendants - Appellees.

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

William R. Clark, a Wyoming prisoner proceeding pro se, appeals the district court's dismissal of his civil rights lawsuit brought against the Wyoming Department

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of Corrections and numerous WDOC employees. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.    BACKGROUND & PROCEDURAL HISTORY

Clark filed his original complaint in January 2025. He alleged numerous and often unrelated violations of constitutional rights, including issues with the mailroom, denial of access to prison programs, and denial of access to medical care.

As required by 28 U.S.C. § 1915A(a), the district court screened the complaint. The court concluded the complaint failed to state any plausible claim for relief because it was insufficiently specific both as to what happened and who was responsible. The court therefore dismissed the complaint without prejudice and granted Clark leave to amend.

Clark filed an amended complaint offering more detail. The district court again screened the complaint. Although the complaint nominally alleged eleven claims for relief, the district court concluded that each claim fit into one of the following headings: "(1) the prison's mail policies; (2) denial of medical treatment; (3) unequal treatment by not being placed in the dog training program; (4) equal protection claims; (5) issues with the prison grievance procedures; and (6) denial of family visitation." R. at 162. The district court concluded Clark failed to state a claim under any of these headings and dismissed the amended complaint with prejudice.

Clark timely appealed, leading to this proceeding.

## II.    ANALYSIS

We review de novo a district court's § 1915A screening dismissal.  *See McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001).

### A.    Claims 1–4 & 7–11

Clark's argument as to his claims 1–4 and 7–11 is a verbatim or near-verbatim repetition of the amended complaint's allegations for each of these claims.  *Compare* R. at 56–59, 62–65 *with* Aplt. Opening Br. at 3–6, 8–11.  This is not enough to preserve an issue for appellate review.  *See, e.g.*, *Semsroth v. City of Wichita*, 555 F.3d 1182, 1186 n.5 (10th Cir. 2009) ("[P]laintiffs' appellate brief is a verbatim copy of . . . their summary judgment response below.  It thus inherently fails to address in a direct way the decision under review and, as a result, does not effectively come to grips with the district court's analysis of the deficiencies in their case." (citation omitted)).

Seemingly explaining his strategy, Clark tells us, "I will respond in short [due] to the fact none of my arguments have changed and I do not wish to hinder the court with a long drawn out appeal."  Aplt. Opening Br. at 2.  But "[t]he first task of an appellant is to explain to us why the district court's decision was wrong.  Recitation of a tale of apparent injustice may assist in that task, but it cannot substitute for legal argument."  *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015).  And "[a]lthough we construe [Clark's] pro se papers liberally, we cannot make arguments for him."  *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1351 (10th Cir. 2017) (citation omitted).  We therefore affirm the district court's dismissal

4

of claims 1–4 and 7–11 because Clark's brief "contains nary a word to challenge the basis of [those] dismissal[s]," *Nixon*, 784 F.3d at 1369.

## B.    Claim 5

Claim 5 of the amended complaint alleges that, in the Wyoming prison system, "only . . . sex offenders and child molesters or prison informants receive jobs of quality and [are] firs[t] for all programs." R. at 59. This apparently includes "the service dog program," which Clark wants to be a part of. *Id.* But Clark "was refused all jobs and out right refused to be placed in the workers unit [due] to the fact [he is] not a child molester and [he] will not inform on other inmates." *Id.* The amended complaint labels this an equal protection claim.[1]

The district court dismissed this claim because "[i]nmates do not 'have a right to access every type of program available to other inmates, ranging from work to recreation.'" R. at 166 (quoting *Est. of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1343 (10th Cir. 2007)). In response, Clark argues, "[W]ow!! School, recreational programs and all jobs are here for all inmates per policies. Federal and

---

[1] Claim 5 additionally mentions the federal constitution's separation of powers, the Eighth Amendment's ban on cruel and unusual punishment, and the due process protections in the Fifth and Fourteenth Amendments. As we will shortly describe, Clark's appellate arguments focus entirely on equal protection, so we will say no more about these other alleged bases for the claim.

Similarly, Claim 5 begins as an attack on the prison system's alleged policy but gradually drifts toward a claim that the prison system retaliated against Clark for complaining about the policy. The district court did not discuss the retaliation aspect of Claim 5 but neither does Clark claim that the district court construed Claim 5 too narrowly. We therefore will not analyze the apparent retaliation cause of action within Claim 5.

state laws are made so all inmates are treated fairly. How can a federal court say all inmates don't have the right to be treated the same?" Aplt. Opening Br. at 6.

Clark misunderstands the Equal Protection Clause. "[It] does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Not all inmates are in all relevant respects alike, as is obvious from the numerous and well-established types of classifications that prisons regularly make (*e.g.*, security status, gang affiliation, etc.).

Moreover, "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* WDOC's alleged policy does not implicate a fundamental right,[2] nor is lack of being a sex offender, child molester, or prison informant an inherently suspect characteristic. In this light, only rational-basis review applies, meaning the alleged policy is presumed to be valid and Clark has "the burden to negative every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (internal quotation marks omitted). Clark does not attempt to meet this standard. We therefore affirm the district court's dismissal of Claim 5.

---

[2] As the district court accurately concluded, access to prison programs is not a fundamental right. *See Estate of DiMarco*, 473 F.3d at 1343.

## C.    Claim 6

Under Claim 6, Clark alleged that he knew an inmate who tried to send a letter containing religious runes, but the prison refused to mail it.  Clark therefore decided to see if he could provoke the same response.  He says his Saint Joseph Daily Missal contains a picture of Jesus Christ holding a scroll with ancient Hebrew writing on it, so he copied that writing and tried to mail it to someone.  Prison guards soon detained him and charged him with attempting to use the mail system to conduct illegal activity.  Specifically, according to a disciplinary charging document attached to the amended complaint, prison guards concluded the writing was an easily broken cipher and the characters "translated to 'send spice with cash app has to look perfect. Mesg card too but spice is cash.'"  R. at 102.[3]  The prison convicted him of the charge and he served sixty days in solitary confinement and lost his prison job.

Clark says this course of events violated his equal protection rights.  He also says the charges were "totally made up . . . to harass me and to punish me for contacting the director's offices," R. at 62, apparently referring to a letter he sent to the WDOC director's office alleging that the prison was not allowing him to appeal grievance denials.  In other words, on top of the equal protection theory, Claim 6 also appears to contain a First Amendment retaliation theory.  *Cf. Requena v. Roberts*,

---

[3] Because Clark attached the charging document to his complaint and there is no dispute that the document is what it says it is, we may consider it as if part of the complaint.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

893 F.3d 1195, 1211 (10th Cir. 2018) ("The filing of prison grievances is constitutionally protected activity.").

As to the equal protection aspect of this claim, the district court concluded that Clark failed to state a plausible claim because he offered nothing to suggest he was treated differently than others similarly situated. Clark offers no rebuttal to this reasoning. We therefore affirm the district court's equal protection analysis.

As to the retaliation aspect of this claim, the district court said that Clark's allegations about contacting the director were too vague. "For instance, the Court does not know when the contact occurred, which director was contacted, or what the subject matter [was] of the contact [that] was made." R. at 167. Clark responds that the exhibits to his complaint provided the information the district court said was lacking. We agree with Clark on this point. *See* R. at 92–94 (Clark's letter to the director's office and a response from an employee in that office).

But the district court also faulted Clark for failing to plead that his contact with the director's office was the but-for cause of the prison discipline. *Cf. Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (in a First Amendment retaliation claim, requiring the retaliatory motive to be the but-for cause of the injury). We agree with the district court that Clark failed to plausibly plead this element. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8

alleged." (citation and internal quotation marks omitted)).  Clark simply announces that his contact with the director's office was the reason he was allegedly subject to made-up charges based on his letter containing (he says) ancient Hebrew writing. Nothing in Claim 6 allows a plausible inference that this is true.  Nor do we see support anywhere else in the amended complaint.  We therefore affirm the district court's dismissal of Claim 6.

## III.    CONCLUSION

We affirm the district court's judgment.[4]

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[4] We grant Clark's motion to proceed on appeal without prepayment of costs or fees.